**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CITTERANCE McGREGOR, AS PERSONAL REPRESENTATIVE AND ADMINISTRATOR OF KRISTOPHER McGREGOR, DECEASED, AND ON HER OWN BEHALF,** | § § § § § § | |
| | § | **CIVIL ACTION NO. 4:26-cv-00685** |
| *Plaintiffs,* | § § | **JURY DEMANDED** |
| | § | |
| **v.** | § § | |
| | § | |
| **HARRIS COUNTY, TEXAS; ED GONZALEZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; NAOMI LOCKETT, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES,** | § § § § § | |
| | § | |
| *Defendants.* | | |

**<u>DEFENDANTS' MOTION
TO DISMISS & FOR STAY</u>**

**<u>TABLE OF CONTENTS</u>**

Page(s)

I.    NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

II.    FACTS .................................................................................................................... 1

III.    STATEMENT OF THE ISSUES ......................................................................... 5

IV.    STANDARD OF REVIEW .................................................................................. 6

V.    SUMMARY OF ARGUMENT ............................................................................ 7

VI.    ARGUMENT ....................................................................................................... 8

    23.    <u>Separate Entities.</u>............................................................................................. 8

27.   Duplicative Parties. ...................................................................................... 9

28.   *Monell* Liability. ........................................................................................... 9

31.   Pattern, Practice & Custom ........................................................................ 10

40.   Conclusory Allegations. .............................................................................. 13

45.   ADA / RA Discrimination. ......................................................................... 15

47.   Medical Malpractice ................................................................................... 15

49.   Qualified Immunity. .................................................................................... 16

52.   Supervisory Liability. ................................................................................. 17

59.   Wrongful Death. .......................................................................................... 19

VII.   MOTION TO STAY PROCEEDINGS .............................................................. 20

VIII.   CONCLUSION .................................................................................................... 21

CERTIFICATE OF SERVICE ........................................................................................ 22

## TABLE OF AUTHORITIES

Page(s)

Cases

*Armstrong v. Symn,*
    999 F.2d 1579, (5th Cir. 1993) ................................................................................. 17
*Arnold v. Williams,*
    979 F.3d 262 (5th Cir. 2020) ..................................................................................... 16
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................... 6, 7, 13, 20
*Backe v. Le Blanc,*
    691 F.3d 645 (5th Cir. 2012) ..................................................................................... 16
*Banuelos v. McFarland,*
    41 F.3d 232 (5th Cir. 1995)......................................................................................... 3
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................. 6, 13

*Bell v. State Prison Officials*,
   2024 WL 2863293 (5th Cir. 2024) ................................................................. 15
*Benfer v. City of Baytown*,
   120 F.4th 1272 (5th Cir. 2024) ...................................................................... 16
*Brown v. Coulston*,
   463 F.Supp.3d 762 (E.D. Tex. May 29, 2020) ............................................... 16
*Cadena v. El Paso Cnty.*,
   946 F.3d 717 (5th Cir. 2020) ......................................................................... 15
*Carswell v. Camp*,
   54 F.4th 307 (5th Cir. 2022) .................................................................. 6, 7, 20
*City of Canton, Ohio v. Harris*,
   489 U.S. 378 (1989) ........................................................................................ 18
*Connick v. Thompson*,
   560 U.S. 51 (2011) ...................................................................................... 9, 10
*Connick*,
   563 U.S. ........................................................................................................... 11
*Davidson v. City of Stafford*,
   848 F.3d 384 (5th Cir. 2017) .................................................................... 10, 18
*Doe v Edgewood Indep. Sch. Dist.*,
   964 F.3d 351 (5th Cir. 2020) ........................................................................... 9
*Dorsey v. Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ......................................................................... 10
*Edwards v. Oliver*,
   31 F.4th 925 (5th Cir. 2022) .......................................................................... 16
*Epley v. Gonzalez*,
   860 Fed.Appx. 310 (5th Cir. 2021) ................................................................ 14
*Franka v. Ve*lasquez,
   332 S.W.3d 367 (Tex.2011) ........................................................................... 19
*Hale v. King*,
   642 F.3d 492 (5th Cir. 2011) ........................................................................... 7
*Hernandez v. Baylor Univ.*,
   274 F.Supp.3d 602 (W.D. Tex. 2017) ............................................................ 10
*Jackson v. Procunier*,
   789 F.2d 307 (5th Cir. 1986) ........................................................................... 6
*Jefferson v. Lead Industries Assn.*,
   106 F.3d 1245 (5th Cir. 1997) .......................................................................... 1
*Johnson v. Gambrinus Co./Spoetzl Brewery*,
   116 F.3d 1052, (5th Cir. 1997) ....................................................................... 14
*Kentucky v. Graham*,
   473 U.S. 159 (1985) ......................................................................................... 9
*King v. Handorf*,
   821 F.3d 650 (5th Cir. 2016) ......................................................................... 16
*Leatherwood v. Prairie View A&M Univ.*,
   No. 01–02–013340–CV, 2004 WL 253275 (Tex. App.-Houston [1st Dist.] Feb. 12, 2004, no
   pet.) ................................................................................................................. 19

iii

*Majors v. City of Canton, MS,*
    2025 WL 3755537*1 (5th Cir. 2025) ........................................................ 20

*Mann, ex. rel. v. Terrazas,*
    404 F.Supp.2d 932 (W.D. Tex. 2005) ................................................... 19

*Melton v. Dallas Area Rapid Transit,*
    391 F.3d 669 (5th Cir. 2004) ................................................................ 14

*Monell v. Dep't of Soc. Servs. of N.Y.C.,*
    436 U.S. 658 (1978) ............................................................................... 9

*Montoya v. FedEx Ground Package Sys., Inc.,*
    614 F.3d 145 (5th Cir. 2010) .................................................................. 6

*Morin v. Caire,*
    77 F.3d 116 (5th Cir. 1996) .................................................................... 6

*Nottingham v. Richardson,*
    499 F.App'x 368 (5th Cir. 2012) ......................................................... 15

*Perez v. Texas A&M Univ. at Corpus Christi,* Civ. A.,
    No. 2:13–CV–225, 2013 WL 6230353 (S.D. Tex. Dec. 2, 2013) ........... 19

*Peterson v. City of Fort Worth,*
    588 F.3d 838 (5th Cir. 2009) ..................................................10, 11, 18

*Pineda v. City of Houston,*
    291 F.3d 325 (5th Cir. 2002) ..........................................................11, 12

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) ........................................................... 9, 10

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
    506 U.S. 139 (1993) ............................................................................. 20

*Ramming v. United States,*
    281 F. 3d 158 (5th Cir. 2001) ................................................................ 6

*Reichle v. Howards,*
    566 U.S. 658 (2012) ............................................................................. 16

*Roberts v. City of Shreveport,*
    397 F.3d 287 (5th Cir. 2005) ............................................................... 18

*Sanchez v. Young Cnty.,*
    956 F.3d 785 (5th Cir. 2020) ......................................................... 10, 18

*Shaw v. Villanueva,*
    918 F.3d 414 (5th Cir. 2019) ................................................................. 7

*Snyder v. Trepagnier,*
    142 F.3d 791 (5th Cir. 1998) ............................................................... 18

*Stringer v. Remington Arms Co.,*
    52 F.4th 660 (5th Cir. 2022) .................................................................. 1

*Taylor v. Books A Million, Inc.,*
    296 F.3d 376 (5th Cir. 2002) ................................................................. 7

*Texas Bay Cherry Hill v. City of Fort Worth,*
    257 S.W.3d 379 (Tex. App.-Fort Worth 2008, no pet.) ........................ 19

*Thompson v. Upshur Cnty.,*
    245 F.3d 447 (5th Cir. 2001) ........................................................... 9, 17

*Tipps v. McCraw,*
    945 F.Supp.2d 761 (W.D. Tex. 2013) ................................................. 19

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
   336 F.3d 375 (5th Cir. 2003) ................................................................. 7
*Valle v. City of Houston*,
   613 F.3d 536 (5th Cir. 2010) ................................................................ 10
*Verastique v. City of Dallas, Tex.*,
   106 F.4th 427 (5th Cir. 2024) ............................................................... 12

Statutes

42 U.S.C. 794(a) and (b) ......................................................................... 15
42 U.S.C. §1997 ........................................................................................ 2
Tex. Civ. Prac. & Rem. Code Sec. 101.106(f) ....................................... 19
Tex. Civ. Prac. & Rem. Code §71.001 .................................................... 19
Tex. Civ. Prac. & Rem. Code §101.021 .................................................. 20
Tex. Const. art. 9, §4 ................................................................................. 8
Tex. Health & Safety Code §61.052 ......................................................... 8
Tex. Health & Safety Code §281.002(b) ................................................... 8
Tex. Health & Safety Code §§61.028 and 61.055 .................................... 8

Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 6

TO THE HONORABLE JUDGE ELLISON:

Sheriff Ed Gonzalez, in his individual capacity, and Harris County, Defendants, file this Motion to Dismiss and for Stay under Fed. R. Civ. P. 12(b)(6), and show the Court the following:

## I.       NATURE AND STAGE OF PROCEEDINGS

1.      This is a civil rights lawsuit arising from alleged inadequate medical and mental health care in the Harris County Jail from January 2-30, 2025. DE 1, pp. 2-3. Plaintiff claims the allegedly inadequate care resulted in the death of Kristopher McGregor. DE 1

2.      Plaintiff filed suit on January 29, 2026.

3.      Plaintiff served Sheriff Gonzalez on February 17, 2026.

4.      Plaintiff served Harris County on February 25, 2026.

5.      This motion to dismiss is timely.

## II.       FACTS

6.      This case arises out of an alleged inadequate medical and/or mental health care in the Harris County Jail that occurred between January 2-30, 2025. DE 1, pp. 2-3.

7.      Pursuant to *Stringer v. Remington Arms Co.*, 52 F.4th 660, 666 n. 11 (5th Cir. 2022) and *Jefferson v. Lead Industries Assn.*, 106 F.3d 1245, 1250 n. 14 (5th Cir. 1997), the Court can take judicial notice of the following:

        a.      The average daily population in Harris County Jail from 2011 to present is approximately 9,000 inmates.  *Jail Population History*, Harris County Texas, https://charts.hctx.net/jailpop/App/JailPopHistory (last visited 2/23/2026).

        b.      The Harris County Jail releases over 23,000 inmates in a 90-day period. *Releases      Last      90      Days*,      Harris      County      Texas, https://charts.hctx.net/jailpop/App/ReleasesLast90      (last      visited      2/23/2026).

1

Extrapolating these figures shows Harris County Jail releases more than 7,500 inmates a month and, therefore, Harris County Jail houses over 90,000 inmates per year.

c.      Sheriff Gonzalez took office in January 2017. *Meet the Team*, CCJ, https://counciloncj.org/team/ed-gonzalez/ (last visited June 30, 2025).

d.      Harris Health, the County Hospital District, is responsible for medical care in the Harris County Jail. E.g. *2022 Annual Report to our Community*, Harris Health System,

https://www.harrishealth.org/SiteCollectionDocuments/financials/HarrisHealth_2022-Community-Report-09-18-2022-FINAL-spreads.pdf (last visited July 1, 2025); *Caring for the Whole Community: Extending an EHR to a Large County Jail*, Epic Share, https://www.epicshare.org/share-and-learn/harris-health-jail-extension (last visited July 1, 2025).

e.      The Harris Center for Mental Health is the governmental entity responsible for providing mental health services in the jail. https://www.theharriscenter.org/about (last visited February 20, 2026) and https://www.theharriscenter.org/services/adult-justice-system-services#:~:text=The%20Jail%2DBased%20Competency%20Restoration,Competency%20restoration%20education%20and%20treatment (last visited February 20, 2026).

f.      The U.S. Department of Justice (DOJ) closed its 42 U.S.C. §1997 investigation into the Harris County Jail on June 7, 2019. The DOJ determined the Sheriff's Office had adequately addressed the issues raised by the DOJ. Exhibit A.

g.    The Texas Commission on Jail Standards (TCJS) certified that Harris County Jail was in compliance with the minimum Jail Standards in August 2024 and again on December 30, 2024. Exhibit B. The Court may also take notice that TCJS <u>did not</u> issue a notice of noncompliance or take any administrative action pertaining to Mr. McGregor's death.

h.    The court may take judicial notice of the Centers for Disease Control (CDC) body mass index guidelines and calculator. See https://www.cdc.gov/bmi/adult-calculator/index.html#:~:text=Table_title:%20Detailed%20Results%20Table_content:%20header:%20%7C%20BMI,%7C%20BMI%20Range:%2030.0%20to%2034.9%20%7C . (last visited February 20, 2026).

i.    The Court may take judicial notice that the CDC found the death rate from 2010 to 2023 to be more than 8 per 1,000 people. See *Trends in Births and Deaths: United States 2010-2023*,  p. 3, Figure 2

https://www.cdc.gov/nchs/data/nvsr/nvsr74/nvsr74-11.pdf . (last visited March 4, 2026). That means the death rate for 100,000 people would be 800 or more. Applying this finding to the jail population of approximately 90,000 per year, one would expect the jail to have 720 deaths per year. Plaintiff alleged 12 deaths over 12 years.

8.    The Court may consider the Plaintiff's medical records at this juncture. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). The medical records are filed under seal as Exhibit C.  For the relevant time period, medical records show the following:

3

a.   Decedent underwent a medical and mental health evaluation on January 2, 2025. Exhibit C, pp. 13-14.

b.   Decedent's height was 6'2 on January 3, 2025. Exhibit C, p. 38.

c.   Decedent had a mental health evaluation on January 4-5, 2025. Exhibit C, p. 7.

d.   Decedent refused medications and mental health treatment on January 5, 2025. Exhibit C, p. 24.

e.   Decedent underwent mental health triage on January 11, 2025. Exhibit C, p. 5.

f.   Decedent weighed 168 pounds on January 12, 2025. Exhibit C, p. 31. This is a healthy weight per the CDC body mass index guidelines and calculator referenced above.

g.   Providers described Decedent as uncooperative, agitated and he refused to sign a consent form on January 12, 2025. Exhibit C, p. 12. Providers reassessed the decedent's medical needs in the same date. Exhibit C, p. 3.

h.   On January 15, 2025, decedent underwent a mental health evaluation. The provider noted he had a history of schizophrenia, appeared to be in denial about his mental illness, and showed poor judgment by refusing mental health treatment. But Decedent did not appear to be suffering from psychological stress. He was removed from the general population and placed in step-down housing for further monitoring and stabilization. Exhibit C, pp. 23-25.

i.   On January 17, 2025, decedent underwent a mental health evaluation. Decedent did not have an active mental health diagnosis. The provider noted Decedent did not have a current prescription for psychotropic medications, he exhibited no signs of mental illness, he appeared groomed and nourished, and he did not appear sleep deprived. The

decedent reported he received and consumed three meals a day and could attend to activities of daily living. The decedent denied suicidal ideation, homicidal ideation, hallucinations, mental health concerns, and medical concerns. Exhibit C, pp. 21-23. Note that decedent was in step-down housing for closer observation as recommended by the provider on January 15, 2025.

j.  On January 29, 2025, detention staff observed Decedent in respiratory distress and immediately called for medical care. P. 17. Exhibit C, p. 1 and 17. He passed away on January 30, 2025, at Ben Taub Medical Center.

9.    The Court may take judicial notice of the autopsy report for the decedent. It is filed under seal as Exhibit D.  The autopsy found the cause of death to be septic complications associated with renal failure with hypertensive cardiovascular disease and schizophrenia as contributory factors. Exhibit D, p. 1. The autopsy described the decedent as "well-nourished". Exhibit D, p. 2. The autopsy shows a weight of 180 pounds and length of 73 1/2 inches. Exhibit D, p. 2. Note that Plaintiff gained 12 pounds while in jail. Further, his weight was healthy per the CDC body mass index guidelines referenced above.

10.    The Court may take judicial notice of the Texas Commission and Jail Standards administrative actions and the lack thereof. Exhibit E.

### III.    STATEMENT OF THE ISSUES

11.    The Court must decide the following issues:

a.    Whether Harris Health or Harris Center are separate legal entities from Harris County.

b.    Whether official capacity claims are duplicative of municipality claims.

c.   Whether Plaintiff's allegations of *Monell* liability and supervisory liability are insufficient.

d.   Whether Plaintiff failed to state a claim under the American with Disabilities Act (ADA) or Rehabilitation Act (RA) (hereafter "ADA").

e.   Whether medical malpractice is a civil rights violation.

f.   Whether Sheriff Gonzalez is protected by qualified immunity.

g.   Whether Plaintiff can make a claim for wrongful death under Texas law.

h.   Whether the case should be stayed under *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022).

## IV.   STANDARD OF REVIEW

12.   Under Fed. R. Civ. P. 12(b)(6), a trial court may dismiss a complaint if it fails to state a claim upon which relief can be granted.  *Ramming v. United States*, 281 F. 3d 158, 161 (5th Cir. 2001). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in the complaint and must be evaluated based on the pleadings. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

13.   Plaintiff's allegations must do more than hint at "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

14.     "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (internal citation omitted). However, threadbare recitals of the elements of a cause of action, conclusory statements, and legal conclusions couched as factual assertions are insufficient. *See Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Ashcroft*, 556 US at 678); *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

## V.     SUMMARY OF ARGUMENT

15.     Harris Health or Harris Center are separate legal entities that provide medical and mental health care in the jail. They are not subdivisions of Harris County.

16.     The official capacity claims are duplicative of municipality claims.

17.     Plaintiff's allegations of *Monell* liability and supervisory liability are insufficient.

18.     Plaintiff failed to state a claim under the ADA.

19.     Medical malpractice is not a civil rights violation or a violation of the ADA.

20.     Sheriff Gonzalez is protected by qualified immunity.

21.     Plaintiff cannot make a claim for wrongful death under Texas law based on the facts pled.

22.     The case should be stayed under *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) because of pending qualified immunity issues.

## VI.     ARGUMENT

23.     **Separate Entities.** Harris Health is responsible for providing inmate health care in the Harris County Jail.  Harris Health is not a subdivision or department of Harris County. Harris Health is the county hospital district created pursuant to Tex. Const. art. 9, §4 and Tex. Health & Safety Code Ch. 281. Harris Health is a separate governmental agency from Harris County. Further, the medical director and medical staff (including co-Defendant Lockett) are Harris Health employees or contractors.

24.     As the hospital district, Harris Health is responsible for "furnishing medical aid and hospital care to indigent and needy persons residing in the district." Tex. Health & Safety Code §281.002(b).  Harris Health, the hospital district, "shall provide health care assistance to each eligible resident…" Tex. Health & Safety Code §61.052. *See also*, Tex. Health & Safety Code §§61.028 and 61.055. Neither the County nor Sheriff Gonzalez can be deliberately indifferent to inmate medical needs or responsible for the allegedly deficient medical provided by the governmental entity designated by state law to provide medical care for Plaintiff.

25.     Similarly, Harris Center for Mental Health is an agency of the State and a separate unit of local government created pursuant to Tex. Health & Safety Code Ch. 534. *See* https://www.theharriscenter.org/about (last checked 2/20/26). Harris Center is the statutorily created community mental health center and provides mental health services in the jail. https://www.theharriscenter.org/services/adult-justice-system-services#:~:text=The%20Jail%2DBased%20Competency%20Restoration,Competency%20restoration%20education%20and%20treatment (last checked 2/20/26). Mental health staff are employees and/or contractors of Harris Center. So again, neither the County nor Sheriff Gonzalez

8

can be deliberately indifferent to inmates' mental health needs or responsible for the allegedly deficient mental health care provided by the governmental entity designated by state law to provide mental health care for Plaintiff.

26.     Further, the medical records show providers engaged with Plaintiff multiple times. And there is nothing in the records indicating the medical or mental health care was insufficient. There is nothing in the medical records indicating Movants interfered with or dictated the course of treatment.  There is nothing in the records indicating detention staff failed to properly observe the Decedent. Further, the records show Plaintiff was able to advocate for himself and did so repeatedly.

27.     **Duplicative Parties.** A claim against a government official in his official capacity is nothing more than a claim against the governmental entity. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). Therefore, any claims against Sheriff Gonzalez in his official capacity are duplicative of the claims against Harris County and the official capacity claims should be dismissed with prejudice.

28.     ***Monell* Liability.** Plaintiff failed to state a §1983 claim under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).  And Plaintiff's claims against Sheriff Gonzalez in his individual capacity are really nothing more than *Monell* claims. The case law requires action or inaction by "the policymaker" to impose liability.  Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). The municipality's actions must show it is legally responsible for the violation. *Doe v Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 364–65 (5th Cir. 2020). This is generally established by proving that (i) an official policy (ii) promulgated by a municipal policymaker (iii) was the "moving force" behind the violation of a constitutional right. *Piotrowski*

*v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). See also *Connick v. Thompson*, 560 U.S. 51, 60 (2011).

29.     The alleged constitutional violations must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

30.     In this case, Movants' policy was to allow the entities designated by state law to treat Plaintiff for his medical and mental health issues. Further, Movants did not prevent Plaintiff from accessing care or dictate the treatment. And the records indicate detention staff followed orders and/or recommendations from providers. This policy cannot be the "moving force" behind Plaintiff's alleged injury.

31.     **<u>Pattern, Practice & Custom</u>**. Plaintiff identifies multiple remote unrelated events to show a pattern or practice.  Some events have no factual similarity.  A custom may give rise to municipal liability only if the unlawful practice is "so persistent and widespread as to practically have the force of law." *Id.* at 61.

32.     A pattern requires "similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). "Showing a pervasive pattern is a heavy burden." *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020); *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 n.4 (5th Cir. 2009) (finding no pattern even though there were 27 complaints of excessive force over four years against police officers).   Some of the incidents Plaintiff identifies pre-date Sheriff Gonzalez' administration. Plaintiff alleges violations that are neither numerous nor similar. Movants have no notice of a systemic problem based on Plaintiff's allegations.

33.    Further, Plaintiff cannot establish Defendants' liability based on the existence of other unproven claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) and *Hernandez v. Baylor Univ.*, 274 F.Supp.3d 602, 609 (W.D. Tex. 2017). The statistics and facts Plaintiff cited show a very low number of lawsuits, injuries, and deaths for the Harris County Jail over an extended time period.

34.    Plaintiff's reference to statistics and events that occurred prior to Sheriff Gonzalez taking office cannot be the basis for *Monell* or supervisory liability. A policy maker must have actual or constructive knowledge that his policies are the moving force behind a constitutional violation. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Sheriff Gonzalez' policies cannot be the driving force behind any constitutional violation that predates his tenure as he did not promulgate those policies. *Id*. Further, any event that occurred after the events alleged by Plaintiff could not provide notice of an unconstitutional policy. *Id*. And, the policy in this case was to provide medical and mental health care.

35.    Plaintiff did not properly plead deliberate indifference. This is "a stringent standard of fault…requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. Plaintiff must allege a pattern of similar constitutional violations by employees. *Id.* at 62. Plaintiff failed to identify any pattern.

36.    Plaintiff's allegations regarding other incidents in the jail provide no factual basis to support a §1983 claim for municipal or supervisory liability. Statistics must account for the size of the facility, number of inmates, etc.

> Further cutting against plaintiffs' claim of a consistent pattern of failed discipline are the factors our caselaw has identified as "relevant to determining whether a series of incidents can be called a pattern," *Peterson*, 588 F.3d at 851–52 (citing *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002)). Those factors—such as department size and number of arrests—provide the context necessary to evaluate whether an

alleged department-wide pattern is so obvious as to impart constructive notice. *See id.* at 851.

Absent those contextual factors, it is *impossible* to identify the existence of a pattern— much less one that imparts constructive notice. Given a constant number of incidents, the percentage of conduct supporting a pattern of illegality shrinks as the size of the police department or the number of arrests increases.[10] Accordingly, depending on context, an identical number of incidents can strongly support—or render "truly uncompelling"—an inference of a pattern of illegality. *Pineda*, 291 F.3d at 329.[11]

Yet, inexplicably, the complaint eschews discussing either factor. Lacking any context or frame of reference, it trades rational analysis for a random shot in the dark. Plaintiffs have no clue whether nineteen incidents over twenty-three years is sufficiently frequent to be obvious in the context of DPD. So, though they purport to discover a pervasive pattern of failure to discipline, in reality they have alleged nothing at all.

*Verastique v. City of Dallas, Tex.*, 106 F.4th 427, 434 (5th Cir. 2024), cert. denied, 145 S. Ct. 772, 220 L. Ed. 2d 273 (2024).

37.     Plaintiff's allegations fail to show a pattern.  In paragraphs 100-109, Plaintiff identifies 10 other incidents that occurred over a 10-year period from 2013-2023. And Plaintiff identifies another death that occurred in 2024 and Mr. McGregor's death. This is a very small number of claims given an inmate population of over 810,000 during Sheriff Gonzalez' administration to date. Further, Sheriff Gonzalez did not even take office until 2017, so the total jail population for the time period Plaintiff references (2013-2025) is over 1,000,000 inmates.

38.     Applying CDC death rates referenced above to the jail population of approximately 90,000 per year, one would expect the jail to have 720 deaths per year. According to a 2016 Johns Hopkins study, medical errors account for 9.5% of all deaths in the U.S. https://hub.jhu.edu/2016/05/03/medical-errors-third-leading-cause-of-death/ (last visited March 4, 2026). Based on this study, the average number of deaths from medical errors in the jail should be approximately 68 per year. Plaintiff alleged 12 deaths over 12 years, including Mr. McGregor's

passing. Even if all 12 deaths were due to medical errors, there is no pattern here—other than the medical and mental health care in the jail appears to be better than the care outside of the jail.

39.    Plaintiff refers to a DOJ investigation to show a pattern. However, that investigation closed under Sheriff Gonzalez's administration in 2019. Plaintiff failed to allege the outcome of the investigation. The DOJ investigation specifically covered the provision of medical and mental health care in the jail. Exhibit A. "[W]e are confident that with the systems now in place and the supervision of the current command staff, HCJ is able to address appropriately the areas covered by our investigation." *Id*. The issues covered by the investigation were resolved to DOJ's satisfaction—by Sheriff Gonzalez. Exhibit A. That is not deliberate indifference. Plaintiff cannot rely on the existence of the investigation without the Court considering the outcome of the investigation.

40.    **Conclusory Allegations.** Plaintiff's complaint must be plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  Plaintiff's allegations are conclusory. And Plaintiff fails to sufficiently distinguish individual capacity allegations from official capacity allegations.

41.    Plaintiff refers to the Texas Minimum Jail Standards as if every notice of non-compliance is a Constitutional violation. This is simply incorrect. The Texas Minimum Jail Standards contain many requirements that have no constitutional significance. For example, the minimum jail standards address fire suppression system inspections, record keeping, education programs, etc. https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TAC&part=9&title=37. Simply being out of compliance with the

minimum standards does not amount to a constitutional violation or notice of an unconstitutional policy. And the jail was in compliance on December 30, 2024. Exhibit B.

42.    Further, Plaintiff's allegations regarding non-compliance actually cut against his claims. First, Plaintiff alleges he was observed and received sustenance, and medical / mental health care. The complaint is replete with allegations regarding what the jail staff observed and with numerous interactions with health and/or mental health providers.

43.    Plaintiff's allegations make the faulty assumption that detention officers have the same medical training and access to medical and mental health records as medical staff.  They do not. Nor do detention officers make treatment decisions. Plaintiff admits that sustenance and medical care were readily available. Plaintiff alleges the system is deficient but does not allege how the system is deficient. Further, Plaintiff alleges that Mr. McGregor was unable to advocate for himself despite multiple instances in the medical records showing Mr. McGregor making his wants and needs known.

44.    Further, in ¶121, Plaintiff refers to a notice of non-compliance regarding lack of observation and an inmate death. Exhibit E. Note that the Harris County Sheriff's Office self-reported the issue and corrected the issue before TCJS even issued the notice of non-compliance. This is not deliberate indifference. That is deliberate concern. And, the incident occurred in December 2024, before TCJS issued the certificate of compliance on December 30, 2024. Exhibit E. Plaintiff makes no factual allegations explaining how this incident is similar to this lawsuit. In fact, Plaintiff's allegations and the medical records show staff properly observed Decedent and requested medical care for him. And Plaintiff does not (and cannot) allege that the failure to properly observe the inmate caused the death in December 2024.

14

45.     The Texas Commission on Jail Standards (TCJS) <u>did not</u> issue a notice of non-compliance related to Mr. McGregor's death. If Plaintiff directs the Court to administrative actions from TCJS, then the Court must consider the facts and outcome of the notices of non-compliance and TCJS' decision not to issue notice of non-compliance in this case. And, of course, the medical records show that Mr. McGregor was properly observed and provided care.

46.     **<u>ADA / RA Discrimination.</u>** To invoke the protection of the Americans with Disabilities Act, Plaintiff must have a qualifying disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) and *Epley v. Gonzalez*, 860 Fed.Appx. 310, 312-13 (5th Cir. 2021). In addition, Plaintiff must allege that his requested accommodation is reasonable accommodation considering the claimed disability.  *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, (5th Cir. 1997). Courts interpret the American with Disabilities Act and the Rehabilitation Act identically. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). For ease of reference, Defendants refer to these statutes collectively as the ADA.

47.     The 5th Circuit held that the ADA is a discrimination statute. Mere failure to treat a disabled prisoner is not a violation of the ADA. *Bell v. State Prison Officials*, 2024 WL 2863293, *6 (5th Cir. 2024) and *Nottingham v. Richardson*, 499 F.App'x 368, 377 (5th Cir. 2012). Plaintiff alleges no facts indicating discrimination based on disability. In reality, Plaintiff alleges medical malpractice, at best. Further, for a Rehabilitation Act claim Plaintiff must allege the discrimination occurred in a federally funded program. *See* 42 U.S.C. 794(a) and (b).

48.     **<u>Medical Malpractice</u>**. Plaintiff's allegations, at best, state a claim for medical malpractice. The crux of Plaintiff's complaint is not about the lack of care but the propriety of the course of treatment. However, complaints about the quality of medical care, disagreement about care, and medical malpractice are not §1983 violations. *Cadena v. El Paso County*, 946 F.3d 717, 728 (5th

Cir. 2020). So even if the medical care was inadequate, Plaintiff has not pled a constitutional violation.

49.     The records show Movants gave the Decedent access to sustenance, medical care and mental health care. The records show providers evaluated Decedent several times while he was in jail and Decedent refused mental health treatment and medical treatment. The records show Decedent was well nourished and he reported he was eating. The records show Decedent was at a healthy weight while in jail and at the time of his death. The records show detention staff observed Decedent and called for medical assistance. In short, there is nothing other than conclusory allegations to indicate Movants did anything that caused Decedent's death. Further, the records show that Movants allowed the providers to examine and treat Decedent and followed the providers' recommendations to the extent they applied to the jail staff. Exhibit C.

50.     **Qualified Immunity.** Sheriff Gonzalez is entitled to qualified immunity. Qualified immunity shields Sheriff Gonzalez "from civil damages liability unless he violated a statute or constitutional right that was clearly established at the time of the challenged conduct." *Brown v. Coulston*, 463 F.Supp.3d 762 (E.D. Tex. May 29, 2020) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

51.     Simply stated, a plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Backe v. Le Blanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Plaintiff has not met the pleading standard necessary to subject Sheriff Gonzalez to the burdens of litigation. Plaintiff does not allege Sheriff Gonzalez was personally involved in the incident or that he was the direct supervisor of those that were personally involved. Plaintiff does not allege how giving inmates

sustenance and access to medical and mental health care from separate governmental entities violates the Constitution. Sheriff Gonzalez is entitled to qualified immunity.

52.    To determine whether a government official is entitled to qualified immunity the Court must determine, (1) whether the undisputed facts and disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of clearly established law. *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024). See also *King v. Handorf*, 821 F.3d 650, 653-654 (5th Cir. 2016) and *Edwards v. Oliver*, 31 F.4th 925, 928-929 (5th Cir. 2022). Plaintiff's core error is attempting to couch a medical malpractice claim as a civil rights violation. Sheriff Gonzalez could not have violated a clearly established right by giving Plaintiff access to medical and mental health care provided by the governmental entities that were created specifically to provide medical and mental health care to Harris County residents. There is no case law to support that claim.

53.    **Supervisory Liability.** Plaintiff's claims against Sheriff Gonzalez are based on supervisory liability and are essentially *Monell* claims. These claims fail as a matter of law. Plaintiff does not allege Sheriff Gonzalez was personally involved. E.g. *Armstrong v. Symn*, 999 F.2d 1579 (5th Cir. 1993). Nor does Plaintiff sufficiently allege a causal link between Sheriff Gonzalez's conduct and the constitutional violation. *Id.* Plaintiff does not allege Sheriff Gonzalez is the direct supervisor of any of the medical providers, mental health providers, or detention officers. Under §1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001).

54.    Further, Plaintiff's own allegations show that Sheriff Gonzalez did not act with deliberate indifference. For example, Plaintiff's allegations (and the medical records) show multiple

interactions with providers.  Plaintiff only offers legal conclusions—not facts—as to how the program is deficient and Sheriff Gonzalez is liable in his individual capacity.

55.    Plaintiff also attempts to saddle Sheriff Gonzalez—in his individual capacity—with incidents that pre-date his policymaking authority. Sheriff Gonzalez cannot be charged with knowledge of and responsibility for incidents that occurred prior to the date he took office— January 1, 2017. Sheriff Gonzalez's actions and policies cannot be the driving force behind any constitutional violation that predates his administration.  Further, any event that occurred after the events alleged by Plaintiff would not put Sheriff Gonzalez on notice of potential violations of Plaintiff's rights.

56.    In addition, Plaintiff alleges violations that are not sufficiently numerous or similar to the incident at issue. Thus, Movant would not have notice of a systemic problem or individualized misconduct for which he is personally liable.

57.    Similar to a municipal liability claim, Plaintiff attempts to show Sheriff Gonzalez is personally liable due to a pattern and practice. A pattern requires "similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). "Showing a pervasive pattern is a heavy burden." *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020); *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 n.4 (5th Cir. 2009) (finding no pattern even though there were 27 complaints of excessive force over four years against police officers).  Plaintiff does not allege a sufficient number of similar incidents and provides no context to determine whether the number of incidents would provide notice of a systemic issue.

58.    To the extent Plaintiff alleges inadequate training, those allegations are likewise insufficient. Liability doesn't attach merely because "a particular officer may be unsatisfactorily trained" or "an otherwise sound program has occasionally been negligently administered." *City of*

*Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989). The Court must focus on the adequacy of the training program in relation to the tasks the particular officer must perform. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), quoting *City of Canton*, 489 U.S. at 390. To survive a motion to dismiss, the plaintiff must allege with specificity how the training program is defective. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005). Plaintiff makes no factual allegations. She merely offers legal conclusions. Further, Exhibit E shows the training provided was adequate.

59.     Again, Plaintiff cannot rely on the DOJ investigation to show Sheriff Gonzalez' liability. DOJ closed the investigation in 2019, under Sheriff Gonzalez's administration. Exhibit B. So, Plaintiff's reliance on this investigation is misplaced. Plaintiff's own allegations show that Sheriff Gonzalez was not deliberately indifferent. He was able to satisfy DOJ shortly after taking office.

60.     **<u>Wrongful Death.</u>** Plaintiff may not make a wrongful death claim. A "county" is specifically excluded from the definition of a "person" that may be sued under the wrongful death statute. *See* Tex. Civ. Prac. & Rem. Code §71.001 and *Mann, ex. rel. v. Terrazas*, 404 F.Supp.2d 932, 941 (W.D. Tex. 2005). So, the only state law mechanism of recovery available is the Texas Tort Claims Act (TTCA).

61.     Since Plaintiff must be asserting a claim under the TTCA, Sheriff Gonzalez must be dismissed as party since Plaintiff also sued Harris County. "Under the TTCA election of remedies provision, the claims against the individual Defendants—in both their individual and official capacities and for both money and injunctive relief—must be dismissed." *Perez v. Texas A&M Univ. at Corpus Christi,* Civ. A. No. 2:13–CV–225, 2013 WL 6230353, at *12 (S.D. Tex. Dec. 2, 2013), *citing* TTCA § 101.106, and *Texas Bay Cherry Hill v. City of Fort Worth,* 257 S.W.3d 379, 401 (Tex. App.-Fort Worth 2008, no pet.) (dismissal required under both individual and official

capacity); *Leatherwood v. Prairie View A&M Univ.,* No. 01–02–013340–CV, 2004 WL 253275, at *2–3 (Tex. App.-Houston [1st Dist.] Feb. 12, 2004, no pet.)("dismissal is appropriate whether the claim is for damages or injunctive relief.").

62.    Further, under subsection (f), an employee is entitled to dismissal if the allegedly wrongful conduct is within the scope of employment and the claim could have been brought against the governmental unit. *Tipps v. McCraw*, 945 F.Supp.2d 761, 765-768 (W.D. Tex. 2013) and Tex. Civ. Prac. & Rem. Code Sec. 101.106(f). The fact that the TTCA may not waive immunity for the asserted claim does not stop the application of subsection (f). *Id*. at 768. *See also Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex.2011).

63.    In addition, Plaintiff has not alleged any facts that would allow recovery under the TTCA. Plaintiff does not—and cannot—allege injury arising from the use of motor driven equipment, a motor vehicle, tangible personal property, or real property. Tex. Civ. Prac. & Rem. Code §101.021.

64.    Plaintiff can only sue under the TTCA. Here, Plaintiff asserted claims against both the County and Sheriff Gonzalez. So, Sheriff Gonzalez is entitled to dismissal of all state law claims against him, even if there is no waiver of immunity. And, the County is entitled to dismissal because Plaintiff did not allege the use of motor-driven equipment, a motor vehicle, tangible personal property, or real property.

## VII.    MOTION TO STAY PROCEEDINGS

65.    Since Plaintiff has asserted claims against Sheriff Gonzalez that are subject to qualified immunity, Sheriff Gonzalez requests a stay of all proceedings, to include all discovery. Movant raised qualified immunity as a defense. No discovery is permitted before the Court rules on the pending motion to dismiss based on qualified immunity. *See Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022). A stay in discovery avoids the "costs and general consequences of subjecting public

officials to the risks of discovery." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143-144 (1993). In fact, Carswell is broad enough to prohibit any proceedings that do not address qualified immunity. *Carswell* at 311. Plaintiff's "allegations must survive an immunity-based motion to dismiss without the benefit of discovery". *Majors v. City of Canton, MS*, 2025 WL 3755537*1 (5th Cir. 2025). "A court 'may not defer ruling' on a qualified immunity assertion, nor allow even 'cabined' discovery, 'before it has determined plaintiffs have pleaded facts sufficient to overcome the defense.'" *Carswell*, 54 F.4th at 312 (citing *Iqbal*, 556 U.S. at 686)". *Id*. at *2. Sheriff Gonzalez moves this Court to stay all proceedings until the Court rules on the 12(b)(6) qualified immunity motion.

## VIII.    CONCLUSION

66.    Plaintiff has not alleged sufficient facts to state a claim against either Sheriff Gonzalez or Harris County. Movants request that Plaintiff's claims be dismissed with prejudice and for a stay of all proceedings pending the qualified immunity motion to dismiss.

Date: March 10, 2026

Respectfully submitted,

By:    */s/ Frank Ford*
        **FRANK FORD**
        Assistant County Attorney
        ATTORNEY-IN-CHARGE
        Federal ID No. 565385
        State Bar No. 24012642
        Phone: (832) 570-7582 (direct)
        Frank.ford@harriscountytx.gov
        **JOSHUA GREEN**
        Assistant County Attorney
        Attorney to be Noticed
        State Bar No. 24080915
        Fed. Bar No. 1428074
        Tel: (713) 274-5229 (direct)
        joshua.green@harriscountytx.gov

        **OFFICE OF THE HARRIS COUNTY ATTORNEY**

21

Harris County Attorney's Office
1019 Congress
Houston, Texas 77002
**ATTORNEYS FOR DEFENDANTS HARRIS
COUNTY AND SHERIFF GONZALEZ**

## <u>CERTIFICATE OF SERVICE</u>

I certify that, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to the parties.

*/s/ Frank Ford*
FRANK FORD