**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CITTERECE McGREGOR, AS PERSONAL REPRESENTATIVE AND ADMINISTRATOR OF KRISTOPHER McGREGOR, DECEASED, AND ON HER OWN BEHALF, | § § § § § § § § | |
| | § | CIVIL ACTION NO. 4:26-cv-00685 |
| *Plaintiffs,* | § § | JURY DEMANDED |
| v. | § § § | |
| HARRIS COUNTY, TEXAS; ED GONZALEZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; NAOMI LOCKETT, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, | § § § § § § § § | |
| *Defendants.* | § | |

**DEFENDANT NAOMI LOCKETT M.D.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) & 12(b)(6)**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Naomi Lockett, M.D. (hereinafter "Dr. Lockett") moves for dismissal of all claims brought against her by Plaintiff Citterece McGregor, in her capacities as personal representative and administrator [sic] of Kristopher McGregor, deceased, and on her own behalf.

TABLE OF CONTENTS

Page

I.    FACTUAL BACKGROUND ........................................................................1

      A.    Nature of Proceeding  ............................................................1
      B.    Summary of Plaintiff's Allegations against Dr. Lockett .....................1
      C.    Request for Judicial Notice ....................................................3

II.   ISSUES PRESENTED  ...........................................................................3

      (1)    whether Plaintiff has stated a plausible claim against her ................3

      (2)    whether she is entitled to qualified immunity......................................3

      (3)    whether the court has or will exercise jurisdiction to the extent
             Plaintiff has asserted a state-law claim against her.  ........................3

III.  Standard of Review  ...........................................................................3

      A.    Rule 8 & Rule 12(b)(6) ...........................................................4
      B.    Qualified Immunity.................................................................5
      C.    State-Law Claims ..................................................................6

IV.   SUMMARY OF ARGUMENT  ..............................................................6

V.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF
      CAN BE GRANTED AGAINST DR. LOCKETT ........................................7

      A.    Applicable Law: Plaintiff Must Adequately Allege, With Specificity,
            "Deliberate Indifference" and a "Casual Connection" between the
            Supervisor's Conduct and the Violation ..............................................7

            1.    Supervisory Liability Generally...................................................7
            2.    Deliberate Indifference must be Pled with Specificity ..............9
            3.    Causal Connection must be Pled with Specificity  ................11
            4.    Individual Acts must be Pled with Specificity .......................12

      B.    Analysis: Plaintiff has Failed to Adequately Allege a Supervisory
            Claim Against Dr. Lockett................................................................13

            1.    Plaintiff has Failed to State a Claim for Supervisory Liability
                  Based on Personal Involvement........................................... 13

ii

2.     *Plaintiff's Allegations Fail to Set Forth a Claim that Dr. Lockett Acted with Deliberate Indifference* ......................................... 14

3.     *Plaintiff's Complaint Fails to Adequately Allege a Casual Connection Between Dr. Lockett and Any Constitutional Violation*................................................................................. 18

VI.     DR. LOCKETT IS ENTITLED TO QUALIFIED IMMUNITY ...................... 19

VII.    THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S WRONGFUL DEATH CLAIM STATE LAW CLAIMS  .................................................... 23

VIII.   CONCLUSION ...................................................................... 25

TABLE OF CITATIONS

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ................................................................................5

*Angulo v. Brown,*
    978 F.3d 942 (5th Cir. 2020) ................................................................ 20

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ................................................................................5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................4

*Carswell v. Camp,*
    547 F.4th 307 (5th Cir. 2022) ................................................................ 19

*Cleveland v. Bell*,
    938 F.3d 672 (5th Cir. 2019) ................................................... 18,20,22

*Estate of Davis v. City of N. Richland Hills,*
    406 F.3d 375 (5th Cir. 2005) ................................................................ 10

*Domino v. Texas Dep't of Criminal Justice,*
    239 F.3d 752 (5th Cir. 1999) ................................................................9

*Evett v. DETNTFF*,
    330 F.3d 681 (5th Cir. 2003) ............................................................. 9,11

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ............................................................................ 9,10

*Ford v. Anderson Cnty.*,
    102 F.4th 292 (5th Cir. 2024) ............................................................... 14

*Forgan v. Howard Cty.*,
    494 F.3d 518 (5th Cir. 2007) ............................................................... 24

*Gates v. Texas Dep't of Protective & Regulatory Services,*

537 F.3d 404 (5th Cir. 2008) ...................................................................8

*Goodman v. Harris Co,*
571 F.3d 388 (5th Cir. 2009) ............................................................ 8,10,18

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ........................................................................ 19

*Harris Co. Hosp. Dist. v. Tomball Reg'l Hosp.,*
283 S.W.3d 838 (Tex. 2009) ............................................................ 23

*Hunter v. Bryant,*
502 U.S. 224 (1991) (per curiam).............................................................6

*Iraheta v. Linebarger Goggan Blair & Sampson,* L.L.P.,
734 Fed. App'x 216 (5th Cir. 2018) ................................................ 24

*Jones v. Hosemann,*
812 F. App'x 235 (5th Cir. 2020) ................................................... 13

*Kisela v. Hughes,*
584 U.S. 100 (2018) ........................................................................ 20

*LaPorte Constr. Co. v. Bayshore Nat'l Bank*,
805 F.2d 1254 (5th Cir. 1986) ......................................................... 25

*Longoria Next Friend of ML v. San Benito Ind. Consolidated Schl. Dist.,*
942 F.3d 258 (5th Cir. 2019) ...............................................................6

*Martinez v. City of North Richland Hills*,
846 Fed. App'x 238 (5th Cir. 2021) ........................................... 12,13

*McClendon v. City of Columbia,*
305 F.3d 314 (5th Cir. 2002) ...............................................................5

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
253 S.W.3d 653 (Tex. 2008) ............................................................ 24

*Monell v. Dept' of Social Services of city of New York,*
436 U.S. 658 (1978).............................................................................8

*Morgan v. Whitfield,*

622 S.W.3d 20, (Tex. App.—El Paso 2019, rule 53.7 motion granted Feb 11, 2020) ................................................................................. 24

*Mullenix v. Luna,*
577 U.S. 7 (2015) (per curiam).................................................. 20

*Norton v. Dimazana,*
122 F.3d 286 (5th Cir. 1997) .................................................... 17

*Oliver v. Scott,*
276 F.3d 736 (5th Cir. 2002) .................................................... 11

*Pearson v. Callahan,*
555 U.S. 223 (2009).................................................................. 20

*Peterson v. City of Fort Worth,*
588 F.3d 838 (5th Cir. 2017) .................................................... 11

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) .................................................... 12

*Porter v. Epps,*
659 F.3d 440 (5th Cir. 2011) ................................................... 9,10

*Pratt v. Harris Co., Tex.*,
822 F.3d 174 (5th Cir. 2016) .................................................... 21

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ................................................... 4,6

*Rios v. City of Del Rio Tex.,*
444 F.3d 417 (5th Cir. 2006) .................................................... 12

*Rivera v. Salazar*,
166 Fed. Appx. 704 (5th Cir. 2005)........................................... 11

*Roberts v. Shreveport,*
397 F.3d 287 (5th Cir. 2008) .................................................... 12

*Romero v. Brown,*
937 F.3d 514 (5th Cir. 2019) .................................................... 11

*Sanders v. Gibson,*

2025 WL 1029440 at *2 (5th Cir., Apr. 7, 2025) .................................. 21,22

*Saucier v. Katz*,
    533 U.S. 194 (2001) ..................................................................5

*Scanlan v. Tex. A&M Univ.*,
    I343 F.3d 533 (5th Cir. 2003) ...................................................... 16

*Solis v. Serrett*,
    31 F.4[th] 975 (5th Cir. 2022) ...................................................... 21

*Southard v. Texas Bd. Of Criminal Justice*,
    114 F.3d 539 (5th Cir. 1997) ...................................................... 19

*Spiller v. City of Texas City, Texas Police Dep't*,
    130 F.3d 162 (5th Cir. 1997) ...................................................... 12

*Stewart v. Murphy*,
    174 F.3d 530 (5th Cir. 1999) ................................................. 11,15

*Tex. Transp. Comm'n v. City of Jersey Village*,
    478 S.W.3d 869 (Tex. App.—Houston [14[th] Dist.] 2015, pet. denied)....... 23

*Thompkins v. Belt*,
    *828 F.2d 298 (5th Cir. 1987)* ........................................................8

*Thompson v. Upshur*,
    245 F.3d 447 (5th Cir. 2001) ...................................................... 22

*Turner v. Lieutenant Driver*,
    848 F.3d 678 (5th Cir. 2017) .........................................................8

*Univ. of Texas M.D. Anderson Cancer Ctr. v. King*,
    329 S.W.3d 876 (Tex. App.—Houston [14[th] Dist.] 2010, pet. denied)....... 24

*Univ. of Tex. Med. Branch at Galveston v. Simmons*,
    No. 14-11-00215-CV, 2012 WL 19665 (Tex. App.—Houston [14th Dist.]
    2012, no pet.) ........................................................................24

*Univ. of Tex. Med. Branch at Galveston v. York*,
    871 S.W.2d 175 (Tex. 1994) ...................................................... 24

*Vann v. City of Southaven, Mississippi*,

884 F.3d 307 (5th Cir. 2018) .................................................................... 6,20

*Walker v. Beaumont ISD,*
    938 F.3d 724 (5th Cir. 2019) ...............................................................6

*West v. Atkins,*
    487 U.S. 42 (1988) .................................................................................7

*Whitley v. Hanna,*
    726 F.3d 631 (5th Cir. 2013) ...............................................................9

*Wichita Falls State Hosp. v. Taylor,*
    106 S.W.3d 692 (Tex. 2003) ................................................................. 23

Statutes

42 U.S.C. § 1983................................................................................... 1,7
Fed. R. Civ. P. 8(a)(2) ..............................................................................4
Fed. R. Civ. P. 12(b)(1) ..................................................................... 1,6,23
Fed. R. Evid. 201.....................................................................................3
Tex. Civ. Prac. & Rem. Code § 101.106(f)......................................... 23
Tex. Civ. Prac. & Rem. Code § 101.023 ............................................ 24
Tex. IX § 4 ................................................................................................3
Tex. Health & Safety Code § 281.002.....................................................3
Texas Tort Claims Act ...................................................................... 23,24

**I.      FACTUAL BACKGROUND**

      **A.**      <u>Nature of Proceeding</u>

This lawsuit arises from the death of Kristopher McGregor ("Kristopher"), which occurred January 30, 2025, at Ben Taub Hospital.  Kristopher had been transported to Ben Taub after he began experiencing respiratory distress during his incarceration at the Harris County Jail.  Plaintiff alleges that Kristopher's schizophrenia was not adequately addressed at the Jail, which led to his inability to seek treat medical treatment for a strep-throat infection, which in turn caused his death.  (Dkt. 1, at pp. 2–3).

Plaintiff asserts: (1) claims pursuant to 42 U.S.C. § 1983 against Defendants Harris County, Ed Gonzalez and Naomi Lockett; (2) claims based on the ADA and Rehabilitation Act against Harris County; and (3) a "wrongful death" claim against all Defendants (Dkt. 1, pp. 24–31).  Plaintiff seeks actual damages, punitive damages, costs, attorney's fees, interest, "disbursement" and "any other and further relief" this Court deems just and equitable.  (Dkt. 1, p. 31).

Naomi Lockett, M.D. ("Dr. Lockett") is a physician employed by the Harris County Hospital District ("Harris Health") as the Medical Director-Correctional Health.

      **B.**      <u>Summary of Plaintiff's Allegations against Dr. Lockett</u>

The Complaint identifies Dr. Lockett as "the medical director for Harris County Jail" who "at all times pertinent hereto, oversaw the medical care of individuals in custody at Harris County Jail", and asserts that she is being sued in

"her official and individual capacities." (Doc. 1, at ¶ 6).  However, the only cause of action in the Complaint specifically addressing Dr. Lockett asserts a supervisory claim against her only in her *individual* capacity.  (Doc. 1, Count 2, ¶ 130).

Therefore, Dr. Lockett submits that Plaintiff is not bringing an official-capacity claim against her.[1]

The sole statement in Plaintiff's 30-page Complaint that addresses specific conduct of Dr. Lockett is the following:

> Upon information and belief, Defendant Lockett performed her duties on-site at the jail, and observed and/or interacted with Kristopher between January 15, 2025, and January 29, 2025.

(Dkt. 1, at ¶ 89).

Plaintiff's Complaint asserts that "as the medical director the Harris County Jail, Dr. Lockett" was "also responsible for the creation, implementation, oversight and supervision of policies, practice and procedures regarding the provision of medical care to individuals in custody at the jail," but does not clearly identify Dr. Lockett's employer or any specific policy at issue.  (Dkt.1, at ¶ 88).

All of the remaining statements in Plaintiff's Complaint addressing Dr. Lockett's conduct lump her alleged actions or omissions together with the other defendants, Sheriff Ed Gonzales and/or Harris County.  *(E.g.,* Dkt. 1, at ¶¶ 84, 94, 97, 98, 122, 129–137).

---

[1] Several problems would immediately beset an official-capacity claim since Dr. Lockett is *not* an employee of Harris County.

2

C.   Request for Judicial Notice

Dr. Lockett respectfully moves the Court to take judicial notice[2] and/or consider the following facts and/or legal relationships:

- In 2022, Harris Health began providing medical services at the Harris County Jail.[3]

- Harris Health is a unit of local government of the State of Texas established for the governmental functions of providing medical and hospital care to the indigent or needy inhabitants of Harris County.  Tex IX § 4; Tex. Health & Safety Code § 281.002.  As such, Harris Health is a governmental unit that is distinct from Harris County.

- A separate governmental unit, "Harris Center" is responsible for mental health care to incarcerated individuals at the Harris County Jail.[4]

## II.   ISSUES PRESENTED

Dr. Lockett asks the Court to determine:

(1)   whether Plaintiff has stated a plausible claim against her;

(2)   whether she is entitled to qualified immunity; and

(3)   whether the court has or will exercise jurisdiction to the extent Plaintiff has asserted a state-law claim against her.

## III.   STANDARD OF REVIEW

---

[2]   Fed. R. Evid. 201 permits the court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately or readily determined from sources whose accuracy cannot reasonably be questioned."  The Court "(1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information."

[3]   *See*  https://www.harrishealth.org/SiteCollectionDocuments/financials/HarrisHealth_2022-Community-Report-09-18-2022-FINAL-spreads.pdf (last checked 6/5/26); and https://www.epicshare.org/share-and-learn/harris-health-jail-extension (last checked 6/5/26).

[4]   See  https://www.theharriscenter.org/about  (last  checked  6/5/26)  and https://www.theharriscenter.org/services/adult-justice-system-services (last checked 6/5/26).

A.    Rule 8 & Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Courts apply these rules through the two-pronged process outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Court "may begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assumes the veracity of any *well-pleaded* allegations: "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether the complaint contains enough non-conclusory facts to state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully, and a claim for relief is implausible on its face

4

when the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  *Twombly*, 550 U.S. at 557; *Iqbal* at 678.  Factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.  A complaint must do more than allege the plaintiff's entitlement to relief; a complaint must "show" such an entitlement with facts. Ultimately, the claim is subject to dismissal if it lacks this factual content.  *Iqbal* at 678-679.

### B.     Qualified Immunity

"When a defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense."  *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002).  At the pleading stage, an individual is entitled to qualified immunity "unless [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  This inquiry must be undertaken in light of the specific context of the particular case, not as a broad general proposition.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  When attempting to show that a right was clearly established at the time of the violation, "[i]t is the plaintiff's burden to find a case in his favor that

5

does not define the law at a high level of generality." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018).

The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). "When a defendant asserts a qualified immunity defense in a motion to dismiss, the court has an 'obligation ... to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad reaching discovery.'" *Longoria Next Friend of ML v. San Benito Ind. Consolidated Sch. Dist.,* 942 F.3d 258, 263–64 (5th Cir. 2019).

### C.    State-Law Claims

The Court must also determine whether it has jurisdiction with regard to any state law claims asserted by Plaintiff. "Under FRCP 12(b)(1), a party may challenge the subject matter jurisdiction of the court to hear a case." *Walker v. Beaumont ISD,* 938 F.3d 724, 734 (5th Cir. 2019). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming,* 281 F.3d at 161.

## IV.    SUMMARY OF ARGUMENT

Plaintiff's claims against Dr. Lockett should be dismissed with prejudice for the following reasons:

- Plaintiff has failed to state a claim against Dr. Lockett for which relief can be granted:

  - Plaintiff's Complaint does not plausibly allege that Dr. Lockett had any personal involvement with Kristopher McGregor;

- o Plaintiff's Complaint does not plausibly allege that Dr. Lockett acted with deliberate indifference, *i.e.,* the Complaint does not contain any non-conclusory or non-collective allegations of specific knowledge or awareness by Dr. Lockett of inadequate policies, practices, training or supervision to which she responded with deliberate indifference; and

- o Plaintiff's allegations do not establish any plausible causal connection between Dr. Lockett and the alleged constitutional violation, i.e., the Complaint does not identify any specific policy, custom, practice, or deficiencies in policies, training, or supervision attributable to Dr. Lockett that resulted in a deprivation of Kristopher's constitutional rights.

- Any claim for monetary damages that Plaintiff has asserted against Dr. Lockett in her individual capacity is barred by qualified immunity.

- The court lacks jurisdiction over any state law claims asserted against Dr. Lockett as these claims are barred by governmental immunity. Alternatively, the court should decline to exercise jurisdiction over these pendant state-law claims.

## V.　PLAINTIFF HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AGAINST DR. LOCKETT

A.　Applicable Law: Plaintiff Must Adequately Allege, With Specificity, Deliberate Indifference" and a "Casual Connection" between the Supervisor's Conduct and the Violation

1.　*Supervisory Liability Generally*

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). As reviewed above, Plaintiff has sued Dr. Lockett based on her supervisory role as "the medical director for Harris County Jail." (Dkt. 1, at ¶ 6). However, § 1983 does

7

not impose vicarious liability on supervisory government officials solely because of a supervisory relationship. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There can be supervisory liability under § 1983 [only] if either: (1) the supervisor had personal involvement in the constitutional violation; or (2) there is a sufficient causal connection between the supervisor's conduct and the alleged constitutional violation. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017); *Thompkins*, 828 F.2d at 304.

Without personal involvement, the Fifth Circuit has permitted supervisory liability under § 1983 only in two circumstances possibly relevant here. The first is where an official has implemented an unconstitutional policy that causally resulted in the constitutional injury. *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) *(i.e.,* "policy based" supervisory liability).

The second is where the supervisor either failed to supervise or to train a subordinate official, *and* a causal link exists between that failure and the violation, *and* the failure to train or supervise amounts to deliberate indifference. *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009) (citations omitted) (supervisory liability based on "failure to train and/or supervise"). Crucially, both of these theories of supervisory liability require specific, non-conclusory allegations that: (1) the official acted with *deliberate indifference*, and (2) a *causal*

8

*connection* exists between the supervisor's conduct and the constitutional violation*.*

### 2.    Deliberate Indifference must be Pled with Specificity

"A supervisor will not be held liable for unintentional oversights." *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003).  In order to establish supervisory liability for constitutional violations committed by subordinates, a plaintiff must show that a supervisor acted with *deliberate indifference* to their subordinates' violations of others' constitutional rights by (1) failing to promulgate adequate policies when the obvious consequences of adopting or not adopting a policy would result in a deprivation of constitutional rights, or (2) failing to properly train or supervise subordinates in a manner causally linked to a violation of constitutional rights. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (emphasis added)*.*

"Deliberate indifference is an extremely high standard to meet" and typically requires a "subjective," "conscious disregard" of the violation of an individual's constitutional rights. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 1999); *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Establishing deliberate indifference, in fact, requires more evidence than a showing of gross negligence. *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (pointing out that gross negligence is a heightened degree of negligence while deliberate indifference is a lesser form of *intent*).   To demonstrate deliberate indifference, a plaintiff must show (1) that public officers were aware of

9

facts from which an inference of a substantial risk of serious harm to an individual could be drawn; and (2) that they actually drew the inference that such potential for harm existed. *Farmer* at 837; *Goodman*, 388 F.3d at 395; *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). This standard draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere failure to "alleviate a significant risk that [the official] should have perceived but did not." *Farmer*, 511 U.S. at 836–40. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Davis*, 406 F.3d at 381.

Moreover, for a supervisor to act with "deliberate indifference," the supervisor must typically have notice of a pattern of similar constitutional violations due to deficient policies or training. *See e.g., Porter,* at 446 ("A pattern of *similar* constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Thus, a plausible pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all bad or unwise acts but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required." *Davis*, 406 F.3d at 383 (emphasis contained in

10

original text).  Further, the extent to which plaintiff has plausibly alleged a pattern must be analyzed in the context of the size or the department or operation at issue.  *See e.g.*, *Peterson v. City of Fort Worth*, 588 F.3d 838, 851–52 (5th Cir. 2017) (holding 27 complaints of excessive force over a period of three years in a department with more than 1,500 officers did not constitute a pattern).

Finally, of critical importance, when an official is sued in her individual capacity, the deliberate indifference of each defendant must be analyzed separately.  *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

### 3.    *Causal Connection must be Pled with Specificity*

A "sufficient causal connection" between the supervisor's conduct and the constitutional violation is a fundamental requirement of § 1983 claims based on supervisory liability.  *Evett,* 330 F.3d at 689.  Thus, it is essential that allegations asserting supervisory liability be specific enough to establish a plausible casual nexus between the failure to train or supervise and the violation of plaintiff's rights.  A plaintiff suing governmental officials in their individual capacities "must allege specific conduct giving rise to a constitutional violation."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).  Conclusory allegations of a supervisor's alleged failures do not meet the necessary threshold for a § 1983 violation. *Romero v. Brown*, 937 F.3d 514, 523–24 (5th Cir. 2019)*; Rivera v. Salazar*, 166 F. App'x 704, 706 (5th Cir. 2005).

In policy-based claims, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory;

11

it must contain specific facts." *Spiller v. City of Texas City, Texas Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). "Each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Piotrowski v. City of Houston*, 237 F.3d 567, 579–80 (5th Cir. 2001). A complaint that fails to complain of any specific policy, fails to plead facts that would permit the conclusion that the unidentified policy or condition was the moving force behind misconduct or that an official subjectively intended to cause harm, and otherwise fails to provide any detail as to *how* an individual defendant violated the rights of a pretrial detainee, fails to state a claim for which relief can be granted and is subject to dismissal. *See Martinez v. City of North Richland Hills*, 846 F. App'x 238, 247 (5th Cir. 2021) (per curiam). Similarly, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. Shreveport*, 397 F.3d 287, 293 (5th Cir. 2008). Thus, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.*

### 4.    *Individual Acts must be Pled with Specificity*

Plaintiffs must state separate factual allegations specific to *each* defendant because referring to "Defendants" collectively does not provide enough information to allow a reasonable inference that any one individual defendant acted with subjective deliberate indifference or acted in a manner causally connected to the alleged constitutional violation. "Because the notice pleading

12

requirement of the Federal Rules of Civil Procedure entitle each defendant to know what he or she did that is asserted to be wrongful, allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss." *Martinez*, 846 F. App'x at 243.  Particularly in claims asserted against officials in their individual capacities, "[i]t is not enough for a plaintiff to simply allege that something unconstitutional happened to him.  The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm." *Jones v. Hosemann,* 812 F. App'x 235, 238-39 (5th Cir. 2020).

      B.      Analysis: Plaintiff Has Failed to Adequately Allege a Supervisory Claim Against Dr. Lockett

              *1.      Plaintiff has Failed to State a Claim for Supervisory Liability Based on Personal Involvement*

Plaintiff has not plainly or plausibly alleged that Dr. Lockett had any personal involvement with Kristopher McGregor.  Of the 170 paragraphs contained in Plaintiff's Complaint, only *one* contains a non-collective allegation concerning Dr. Lockett's relationship with or action toward Kristopher McGregor. This allegation—in ¶ 88—is made "upon information and belief" and asserts that Dr. Lockett "observed and/or interacted" with Kristopher at some point between January 15-29, 2025.  However, it does not include any detail about what interaction Dr. Lockett had with Kristopher and does not constitute a factual basis from which it can be plausibly inferred that Dr. Lockett had any meaningful personal involvement with Kristopher or with any violation of his constitutional rights.  This assertion does not "properly set[] forth a claim of a deprivation of

13

rights, privileges or immunities secured by the Constitution or laws of the United States caused by person acting under the color of state law*." Ford v. Anderson Cnty.*, 102 F.4th 292, 319 (5th Cir. 2024) (general allegations that jail supervisor exchanged text messages with nurse regarding pretrial detainee who died in custody on date of detainee's death were insufficient to state plausible claim against jail supervisor in his individual capacity).

The Complaint does not assert that Dr. Lockett ever personally treated Kristopher McGregor, nor does it unequivocally assert that she, unlike the jail supervisor in *Ford,* even had any subjective awareness of Kristopher or his medical needs.  Although the Complaint references very specific encounters other staff had with Kristopher (*see e.g.*, ¶ 37 concerning visit to mental health unit; ¶ 42 visit with clinician in his cell), it lacks any factual details concerning any specific encounter between Kristopher and Dr. Lockett.

Even assuming *arguendo* that Dr. Lockett "observed and/or encountered" Kristopher at some point during the last two weeks of his stay at the Jail, this allegation is insufficient to suggest that she had any personal involvement in a violation of his constitutional rights.  The bare allegation of an encounter or observation is far from an allegation that Dr. Lockett violated Kristopher's rights. Thus, Plaintiff has failed to state a claim of supervisory liability against Dr. Lockett based on personal involvement.

> 2.     *Plaintiff's Allegations Fail to Set Forth a Claim that Dr. Lockett Acted with Deliberate Indifference*

14

The remaining allegations contained in Plaintiff's Complaint that could conceivably implicate Dr. Lockett either lump Dr. Lockett and Sheriff Ed Gonzales (and in some instances, Harris County) together or are made against all "Defendants."  Critically, *all* of the allegations directly asserting "deliberate indifference" are couched in the form of a collective allegations.[5]  These collective allegations fail to state a claim against Dr. Lockett in her individual capacity because they improperly group Dr. Lockett together with the Harris County Sheriff or Harris County, making it impossible for the alleged deliberate indifference of each defendant to be analyzed separately as required by the Fifth Circuit.  *Stewart*, 174 at 537.

Further, the allegations in Plaintiff's Complaint do not contain specific facts from which it can be plausibly inferred that Dr. Lockett had any awareness of Kristopher, his specific needs, or any specific knowledge or awareness concerning specific inadequacies concerning policies, training or supervision to which *she* responded with deliberate indifference.  More specifically, the Complaint fails to adequately establish, with the similarity and specificity required by Fifth Circuit precedent, any pattern to which it could be plausibly inferred *that Dr. Lockett* responded with *deliberate indifference*.

The Complaint tries to address this obvious shortcoming by noting 10 other deaths that occurred in the Jail between 2013 and 2022.  Dkt. 1, at ¶ 100-109.  But each of these incidents are dissimilar or impossible to attribute to Dr. Lockett

---

[5]  See Dkt. 1, ¶ 90–92, 131–136, 166.

in several respects. For instance, almost all of the described incidents allege a failure in observation and monitoring by correctional staff in the jail facility itself (*i.e.* jail cells), a function and location over which Dr. Lockett, in her role as medical director, is not alleged to have any authority or control. One of the cited incidents occurred well over a decade ago and did not directly concern the provision of *medical* care. The other nine incidents differed in detail, even based on the limited factual vignettes that Plaintiff provides. Given the size of the population the Harris County Jail serves[6], many of whom arrive with poorly controlled preexisting medical conditions, substance abuse disorders, violent tendencies, and/or mental health issues, these isolated outcomes, while tragic, are simply not sufficiently numerous to support a plausible inference that Dr. Lockett had knowledge of a pattern, to which, in her limited role as medical director, she responded with deliberate indifference.

Moreover, the Court may take notice of Kristopher's medical record, which was referenced extensively in the Complaint and attached to Defendant Ed Gonzalez' Motion to Dismiss (Dkt. 22).[7] The record tends to affirmatively negate any notion that Dr. Lockett acted with deliberate indifference. To take one example, Plaintiff's chart reflects that he was last seen by social work on January

---

[6]    In January of 2025, the jail population was approximately 9800 detainees. See https://charts.hctx.net/jailpop "Trends" (last checked 6/5/26).

[7]    Dkt. 1, at ¶¶ 37–50 (referencing "review of his chart" and referring to "documenting" of symptoms). Although the court ordinarily "must not go outside the pleadings" when reviewing a Rule 12(b)(g) motion, exceptions arise. *Scanlan v. Tex. A&M Univ.*, I343 F.3d 533, 536 (5th Cir. 2003). The court may consider "documents that are referred to in the plaintiff's complaint" and "central to the plaintiff's claim." *Id.*

16

17, 2025, at which time he was described as being "newly housed in Step Down Houston 2B2."[8]   He denied any suicidal or homicidal ideation or hallucinations. He reported that he slept "alright" and did not appear sleep deprived.   He reported consuming 3 out of 3 meals daily and attends to his ADLs "appearing casually groomed and nourished."  He denied having current issues with peers or staff.  He also denied any mental health or medical concerns or issues during the assessment.  He was not inappropriate, did not present with aggressive behavior or exhibit any behaviors of acute mental health distress.  He was counseled in coping skills to manage potential stressors, educated on how to access mental health services, and he appeared "receptive and appreciative of the information." Due to his relatively recent admission to step down housing, the recommendation was made that he remain there for "closer monitoring and stabilization."

The chart does not reflect that the mental health or medical personnel who encountered Kristopher in the Harris County Jail either treated or responded to him with deliberate indifference.   Rather, the evaluations and interventions described in Kristopher's medical record—and acknowledged by the Complaint— show care regarding his psychiatric, medical condition and safety, which is inconsistent with deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 291–92 (5th Cir. 1997) (evidence of examinations, diagnosis, medication and

---

[8]  According to its website, Harris Center operates a "Mental Health Step Down Treatment" program within the HCSO Jail which has "288 beds allocated to provide treatment and discharge planning."   Its services include: "screenings and assessments, medication management, requests and/or referrals for additional medical services, and treatment and follow up care planning.   https://www.theharriscenter.org/services/adult-justice-system-services (last checked 6/5/26)

other treatment negates deliberate indifference).  There "is a vast difference between an earnest, abelite unsuccessful attempt to care for a prisoner" and "deliberate indifference."  *Cleveland*, 938 F.3d at 677.

Accordingly, to the extent Dr. Lockett may have been the supervisor of any of these personnel, it cannot be plausibly inferred from the care they provided as documented in Kristopher's medical record that Dr. Lockett instituted a policy or training program with deliberate indifference that resulted in a violation of any Kristopher's constitutional rights.

3.    *Plaintiff's Complaint Fails to Adequately Allege a Casual Connection Between Dr. Lockett and Any Constitutional Violation*

Because Plaintiff has failed to allege facts that could establish that Dr. Lockett acted with deliberate indifference, an analysis of other defects in Plaintiff's Complaint should not be necessary.  *See Goodman*, 388 F.3d at 395 ("Where a plaintiff fails to plead allegations from which a court could infer a defendant acted with deliberate indifference, the court need not address the other prongs of supervisory liability.").  Even so, in addition to the deficiencies in the Complaint with regard to deliberate indifference, the Complaint also fails to include any non-conclusory allegations describing any specific act or omission of Dr. Lockett with regard to policy implementation, training, or supervision that was the *moving force* behind the alleged violation.

Plaintiff's Complaint lacks allegations clearly articulating what specific act or omission *of Dr. Lockett* concerning policy implementation, training, or

18

supervision resulted in a violation of Kristopher's rights.  The Complaint is rife with allegations or omissions that unnamed "staff" failed to take unspecified "steps" and "measures" to address Kristopher's needs.  However, as analyzed above, the documentation in the medical record directly undercuts these allegations, and Plaintiff's Complaint is completely devoid of allegations concerning *whom* Dr. Lockett failed to supervise or train, what "particular aspect" of her training program was insufficient, what particular offending policies Plaintiff believes *Dr. Lockett* was responsible for, or what specific thing Dr. Lockett should have done differently to prevent a constitutional violation.  In light of the Fifth Circuit's clear requirement that any misconduct be "affirmatively linked" to an action or inaction of the supervisor, this lack of specificity is fatal to Plaintiff's claim against Dr. Lockett.  *See Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 550 (5th Cir. 1997).

## VI.    DR. LOCKETT IS ENTITLED TO QUALIFIED IMMUNITY

Public officials acting within the scope of their authority are generally shielded from civil liability by the doctrine of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982).  Unless a plaintiff's allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Carswell v. Camp,* 547 F.4th 307, 311-12 (5th Cir. 2022) (holding district court abused its discretion in deferring its ruling on county employees' motion to dismiss based on qualified immunity).  Qualified immunity represents the norm,

19

and courts should deny a defendant immunity only in rare circumstances. *Angulo v. Brown,* 978 F.3d 942, 949 (5th Cir. 2020).

To overcome an official qualified immunity defense, a plaintiff must establish: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Al-Kidd,* 563 U.S. at 735. Lower courts have discretion to decide which of the two prongs of qualified immunity analysis to tackle first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Al-Kidd*, 563 U.S. at 743. Thus, "[t]he Supreme Court has repeatedly warned 'not to define clearly established law at a high level of generality.'" *Cleveland v. Bell*, 938 F.3d 672, 677 (5th Cir. 2019) (citing *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (per curiam). And when attempting to show that a right was clearly established at the time of the violation, "[i]t is the plaintiff's burden to find a case in his favor that does not define the law a high level of generality." *Vann,* 884 F.3d at 310 (internal quotations omitted). Cases that are "too factually distinct to speak clearly to the specific circumstances here" are not enough to deny qualified immunity. *Id.* Although qualified immunity does not require a case in point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

20

Finally, it is well established that when multiple officials are sued in their individual capacity, each individual defendant's entitlement to qualified immunity must be analyzed separately. Fifth Circuit precedent "makes clear that the district court errs by collectively considering the actions of defendants in the qualified immunity context." *Sanders v. Gibson*, No. 23-11196, 2025 WL 1029440 at *2 (5th Cir., Apr. 7, 2025) (quoting *Solis v. Serrett,* 31 F.4th 975, 981 (5th Cir. 2022)); *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016).

The case against Dr. Lockett should be dismissed because Dr. Lockett has asserted the qualified immunity defense, and the Complaint does not adequately allege that *Dr. Lockett* violated Kristopher's clearly established constitutional rights. The dispositive question in this step of the qualified immunity analysis is "whether the violative nature of *particular* conduct is clearly established." *Al-Kidd*, 563 U.S. at 742. Kristopher's medical records reflect that he was offered care and treatment by health care providers at the Jail, and do not suggest that any health care provider over whom Dr. Lockett conceivably had the duty or authority to supervise violated any of Kristopher's clearly established rights. These records also make clear that Kristopher refused medical treatment and mental health care offered to him at the Jail.[9] Where an adult detainee clearly refuses treatment, even where there is evidence of the detainee's incompetence, the detainee's right to refuse treatment "cannot be ignored when considering the objective reasonableness" of any response by officials who attempt to manage

---

[9] The Complaint also acknowledges Kristopher's refusal of treatment. (Dkt. 1, at ¶ 42).

21

the ensuing situation. *Thompson v. Uphsur Cnty., Texas*, 245 F.3d 447, 461–62 (5th Cir. 2001); *see also Cleveland v. Bell*, 938 F.3d 672 (5th Cir. 2019) (holding any right of detainee to receive medical care from a nurse in a correctional facility after he refused his medication was *not* clearly established as she was not on "fair notice" that she was acting unconstitutionally when she later failed to perceive he was experiencing life threatening medical emergency).  Here, where Kristopher refused his medication, and in an attempt to find a solution that took his psychiatric needs into account, was placed in a specially designated "step down unit" where providers anticipated he would receive "closer monitoring and stabilization," it cannot reasonably be concluded that either the providers who were attempting to manage his needs, or that Dr. Lockett (to the extent she may have been responsible for supervising any of those providers) acted in such a manner that "every reasonable official would have understood" what she was doing was unconstitutional.  This situation, which required the involved officials to exercise discretion in a context where the law is *not* clearly established beyond a high level of generality, is precisely the type of case contemplated by the Supreme Court, in which the named official is entitled to "breathing room" and the protections of qualified immunity.  *Al Kidd*, 563 U.S. at 743.

Qualified immunity must be evaluated on an individualized basis.  When the facts of this case are considered, the collective allegations contained in Plaintiff's Complaint do not provide an adequate basis from which this court can deny the qualified immunity defense asserted by Dr. Lockett.  *See Sanders,* 2025

22

WL 1029440, at *2 (vacating district court's order denying defendants' motion to dismiss and remanding case to district court for evaluation of qualified immunity on an individualized basis).

## VII.    THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S WRONGFUL DEATH CLAIM STATE LAW CLAIMS

Without citing to any statute or legal authority, Plaintiff asserts a claim for "Wrongful Death – Against All Defendants." (Dkt. 1, p. 30, Count 5). Outside specialized contexts such as admiralty law that are inapplicable here, there is no federal wrongful death claim. To extent Plaintiff has asserted a state law wrongful death claim, it is presumably based on Texas Wrongful Death Statue as codified at Texas Civil Practice & Remedies Code § 71.001 *et seq*. Dr. Lockett moves for dismissal of this claim pursuant to FRCP 12(b)(1) because this state law claim is barred by governmental immunity.

As an employee of Harris Health[10], a unit local government of the State of Texas, Dr. Lockett enjoys sovereign immunity[11] from common law tort liability based on suits complaining of conduct within the general scope of the employee's employment. TEX. CIV. PRAC. & REM. CODE § 101.106(f) (the "Texas Tort Claims Act" or "TTCA"); *see also Harris Co. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838 (Tex. 2009) (holding Harris Health enjoys immunity from

---

[10] See the Affidavit of Jamie Lard attached as Ex. 1.

[11] The immunity to which Harris Health is entitled is technically "governmental immunity," which "protects political subdivisions of the State." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 note 3 (Tex. 2003). This distinction does not affect the analysis of Harris Health's immunity from Plaintiff's claims. *See Tex. Transp. Comm'n v City of Jersey Village*, 478 S.W.3d 869, 882 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

23

common law tort liability based on Texas Tort Claims Act); *Morgan v. Whitfield*, 622 S.W.3d 20 (Tex. App.—El Paso 2019, no pet.) (holding prison officials entitled to dismissal of inmate's state law negligence claims against them in their individual capacity pursuant to Texas Tort Claims Act).

"State sovereign immunity deprives the court of subject matter jurisdiction." *Iraheta v. Linebarger Goggan Blair & Sampson,* L.L.P., 734 Fed. App'x 216, 219 (5th Cir. 2018). Sovereign immunity shields the State of Texas from both suit and liability. *Id.* Under the TTCA, "[a] Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity." *Forgan v. Howard Cnty.*, 494 F.3d 518, 520 (5th Cir. 2007).

The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities ... ." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE § 101.023). Plaintiff's allegations do not support a finding that Dr. Lockett's state law immunities should be waived.[12] Accordingly, Plaintiff cannot overcome Dr. Lockett's sovereign immunity with respect to his state law claims, and these claims should be dismissed.

---

[12]  Texas courts have concluded that waiver does not encompass lapses in medical documentation, failures to monitor, failure to use acceptable practices, or failures to disclose risks. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 176 (Tex. 1994) (no waiver for medical documentation lapses); *Univ. of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880-81 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (no waiver of immunity for allegations of failure to act or to use property, failure to supervise, failure to investigate, failure to monitor, failure to address risk and use of medication); *Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-11-00215-CV, 2012 WL 19665 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (no waiver or immunity for allegations of failure to train, failure to develop proper procedures, failure to follow proper procedures and policies).

In the alternative, because Plaintiff has failed to state a plausible claim for relief pursuant to any federal law, Dr. Lockett moves the court to exercise its discretion to dismiss Plaintiff's state-law claims.  When all federal claims are dismissed prior to trial, the general rule in the Fifth Circuit is to decline exercising jurisdiction over the remaining state-law claims.  *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986).

## VIII.  CONCLUSION

As Plaintiff has failed to state a claim for which relief can be granted, Dr. Lockett respectfully requests that the claims of Plaintiff Citterance McGregor, as personal representative and administrator of Kristopher McGregor, deceased and on her own behalf, be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

STRAWN PICKENS LLP

By:   */s/ John R. Strawn, Jr.*
      John R. Strawn, Jr., #19374100
      TC Energy Center
      700 Louisiana, Suite 4220
      Houston, Texas 77002
      (713) 659-9600
      (713) 659-9601 (Fax)
      jstrawn@strawnpickens.com
      Attorneys for Naomi Lockett, M.D.

OF COUNSEL:
STRAWN PICKENS L.L.P.
Victoria P. Skinner, #24005579

25

TC Energy Center
700 Louisiana, Suite 4220
Houston, Texas 77002
(713) 659-9600
(713) 659-9601 (Fax)
vskinner@strawnpickens.com

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Fed. R. Civ. P. 5(b), a true copy of the foregoing document was delivered by electronic service or via U.S. Mail to all counsel of record on this 8th day of June 2026.

/s/ *John R. Strawn, Jr.*
John R. Strawn, Jr.
Attorney for Naomi Lockett, M.D.

26